WILLIAM I. MARSHALL *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Worcester.    October 4. — 20, 1887.    C. ALLEN & KNOWLTON, JJ., absent.

In an action against a railroad corporation for an assault and false imprisonment, it appeared that the plaintiff, who was the holder of a mileage coupon ticket, tendered, while a passenger on a train on the defendant's railroad, some of the coupons in payment of his fare, in violation of the conditions of the contract under which he held them; and that the conductor of the train refused to receive them, and arrested him. The plaintiff at the trial asked the judge to rule that the evasion or attempt to evade the payment of fare, for which a passenger may be lawfully ejected or removed from a railroad car must be a fraudulent evasion, with an intention to defraud the railroad company." The judge refused so to rule, but did rule that the coupons offered by the plaintiff to the conductor were not a legal tender of his fare, and that, upon the plaintiff's

refusal to make any other payment, the conductor, who was a railroad police officer, might arrest him without a warrant. The plaintiff excepted to the refusal to rule as requested, but not to the ruling given. *Held,* that the words "ejected or removed" in the ruling requested were not to be construed as meaning "removed by arrest."

If a party to an action seeks to justify an act on the ground that he believed that he had a right to do as he did, and his belief is a material issue, he cannot, as of right, strengthen his direct testimony as to what his belief was, by testifying to other facts which would make it likely that he believed as he said.

TORT. The declaration contained three counts: the first, for an assault; the second, for an assault and for false imprisonment; and the third, for malicious prosecution. Trial in the Superior Court, before *Aldrich,* J., who allowed a bill of exceptions, in substance as follows:

The plaintiff was a public lecturer, and, having delivered a lecture at Poughkeepsie in the State of New York, on the night of April 4, 1885, he sent his assistant by night train to Palmer, in this Commonwealth, intending himself to go to Palmer on April 6. The plaintiff was the owner of a thousand-mile coupon mileage ticket, good to bearer over the defendant's railroad, which he had bought some two months before. This coupon-book was in the usual form, and contained on the first page the following printed clause: " To be used upon the conditions named in the contract attached to and made a part hereof." And on the back page was printed the following: " Contract. The conditions upon which this mileage coupon ticket is sold by the Boston & Albany R. R. Co., and purchased and used by the bearer of this ticket, are as follows: 1st. That conductors shall detach in consecutive order coupons, representing the distance travelled, except when presented for any distance less than three miles, then three coupons shall be detached. 2d. That all mileage coupons will be void if detached by any person but the conductor."

The plaintiff tore out seven pages, containing one hundred and forty coupons, from this book, and gave the balance of the book to his assistant for his use in going to Palmer, instructing him to meet the plaintiff at the depot in Palmer, on April 6, upon the arrival of the train, with this book. Upon April 6 the plaintiff took the train on the defendant's road at Greenbush (near Albany) intending to go to Palmer, and, when the

conductor asked him for his ticket, he offered him these coupons, which he had torn from the mileage book, which in amount were more than sufficient to pay his fare to Palmer at coupon rates. These coupons entitled the holder to ride one mile upon each coupon, and were sold at the rate of two cents per coupon, being at a less rate than the cash fare for travel. The conductor asked the plaintiff if he had the book from which these coupons had been detached, and the plaintiff explained to him the circumstances of his sending the book to Palmer by his assistant, and told him that he could see the book when the train arrived at Palmer, as his assistant would be at the depot with it. The conductor declined to accept these coupons for the plaintiff's fare, and demanded the amount of the cash fare to Springfield, which was as far as that conductor was to go on that train, as he then informed the plaintiff. The plaintiff stated his belief that the coupons were good, and gave to the conductor his card, showing his name, business, and residence. The conductor told the plaintiff that he had no doubt that the plaintiff owned the book, but stated that the coupons were not good without the book, and declined to accept them. At several other times and places, before the arrival of the train at Pittsfield, conversations similar to the above took place between the plaintiff and the conductor, the plaintiff offering these coupons for his fare, and the conductor declining to accept them.

There was evidence tending to show that, upon the arrival of the train at Pittsfield, the conductor called a policeman of the town of Pittsfield into the car, and again, in the presence of the police officer, demanded of the plaintiff the payment of his fare, and that the plaintiff again tendered said coupons, and refused to pay otherwise; and that thereupon the conductor, who was a railroad police officer, arrested the plaintiff and placed him in charge of the police officer, who took the plaintiff to the police station in Pittsfield, and afterwards to the district court, where he made a complaint against the plaintiff, which complaint was signed and sworn to by the said police officer, for " fraudulently evading the payment of the fare by refusing to pay the fare lawfully established by the Boston and Albany Railroad Corporation," and the plaintiff was placed under recognizance for his appearance before said court on April 15.

The plaintiff testified that the conductor was insulting in his language to him at Pittsfield, in that he said to him in a loud tone, as he came into the car with the policeman, "What are you going to do about that fare of yours to Pittsfield, or Springfield, or wherever you are going?" and that this was said in the presence of a large number of passengers who had entered the train at Pittsfield.   The conductor denied using this language.

It appeared from the evidence for the defendant, that the following, among other rules for the government of conductors, had been established by the defendant corporation, and was in force at the time: "Coupons detached by passengers will be refused and fare collected, unless passengers can show the book from which coupons were detached, which must agree in number and form."   This rule was not known to the plaintiff.

At the trial of the plaintiff upon said complaint, on said April 15, he was acquitted, and ordered by the court to be discharged. The defendant corporation employed counsel, who appeared in the prosecution of the plaintiff before said district court at this trial.

The defendant put in evidence that they had consulted learned counsel on the day preceding said trial, relative to said prosecution, and, having fairly informed him of all the facts, were advised by him that the plaintiff was liable under said complaint.

The plaintiff, for the purpose of showing his intent and belief that the said coupons were a proper tender of his fare, offered to prove that he had frequently seen the conductors on the defendant railroad accept, without objection, in payment of fare, similar coupons, which had been detached from similar mileage books by passengers or others than such conductors ; but the judge excluded the evidence in this form, and for the specific purpose for which it was offered, but stated, if the plaintiff proposed to prove a custom of the defendant to accept coupons so tendered, that the evidence would be admissible.

The plaintiff asked the judge to rule that "the evasion or attempt to evade the payment of fare, for which a passenger may be lawfully ejected or removed from a railroad car, must be a fraudulent evasion, with an intent to defraud the railroad company;" but the judge declined so to rule, and did rule that the coupons offered by the plaintiff to the conductor were not

a legal tender of his fare, and that, upon the plaintiff's refusal to make any other payment, the conductor, who was a railroad police officer, might arrest him without a warrant.

Upon the count for malicious prosecution, the judge gave full instructions, to which no exception was taken, as to what would constitute probable cause on the part of the defendant and the conductor, and that the defendant would not be authorized to prosecute the plaintiff, in the manner in which the complaint was made in this case, for a mere evasion to pay fare, unless it was a fraudulent evasion.

The jury found, upon a special issue submitted to them, that the arrest of the plaintiff was made by the conductor as a railroad police officer; and, after the return of their verdict, the foreman of the jury, in reply to a question of the judge, said that they found that the defendant in the prosecution of the plaintiff was acting under the advice of counsel, to whom a full statement of the facts had been made by the defendant.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions to the refusal to rule as requested, and to the exclusion of the evidence offered.

*H. C. Hartwell*, for the plaintiff.

*F. P. Goulding*, for the defendant.

HOLMES, J. 1. The ruling requested by the plaintiff was, that "the evasion or attempt to evade the payment of fare, for which a passenger may be lawfully ejected or removed from a railroad car, must be a fraudulent evasion, with an intent to defraud the railroad company." There is no question, and the plaintiff does not dispute, that this request for a ruling, if taken literally, was rightly refused. *Beckwith* v. *Cheshire Railroad*, 143 Mass. 68. We are asked to construe the words "ejected or removed," in connection with the facts and with instructions given, and not excepted to, as meaning "removed by arrest," or, in other words, "arrested." We think, however, that the suggestion does too great violence to the language used, and that we should not be warranted in assuming that the judge to whom the request was addressed understood it as the plaintiff would have us understand it.

2. "The plaintiff, for the purpose of showing his intent and belief that the said coupons were a proper tender of his fare,

offered to prove that he had frequently seen the conductors on the defendant railroad accept, without objection, in payment of fare, similar coupons, which had been detached from similar mileage books by passengers or others than such conductors; but the judge excluded the evidence in this form, and for the specific purpose for which it was offered, but stated, if the plaintiff proposed to prove a custom of the defendant to accept coupons so tendered, that the evidence would be admissible."

It would seem that the plaintiff could not have been injured by the exclusion of the evidence as stated. For, upon the rulings of the court under which this case was tried without objection by the plaintiff, his belief or intent was only material to the count for malicious prosecution, and the verdict for the defendant on that count was based on the finding that it acted under the advice of counsel. But the evidence was properly excluded. If the plaintiff's actual belief was material, and was really controverted, he could not, as of right, strengthen his direct testimony as to what his belief was by testifying to other facts which would make it likely that he believed as he said. *Delano* v. *Smith Charities*, 138 Mass. 63. This seems to have been the purpose for which the evidence was offered. If it had been offered to show that the defendant company had justified the plaintiff's conduct by its own, the court was ready to admit it, subject to proper limitations.     *Exceptions overruled.*